UNITED STATES DISTRICT COURT                    **NOT FOR PUBLICATION**
EASTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                Plaintiff,

        – against –                                    **MEMORANDUM & ORDER**

TONY CLANTON,                                   97-cr-776 (ERK) (SJB)

              Defendant.
_____

KORMAN, *J.*:

      Defendant Tony Clanton, convicted in 1997 of Hobbs Act and federal firearm offenses, petitions for a writ of error *coram nobis* to vacate his conviction under 18 U.S.C. § 924(c).  Clanton argues that the conviction should be vacated because it was predicated on an attempted Hobbs Act robbery (rather than a completed Hobbs Act robbery), which the Supreme Court held in *United States v. Taylor*, 596 U.S. 845 (2022), is not a crime of violence sufficient to support a conviction under § 924(c).  For the reasons set forth below, Clanton's petition for a writ of error *coram nobis* is denied.

## I.   Background

      Clanton was arrested in 1997 after offering to sell guns to an undercover police officer and instead robbing the undercover officer at gunpoint.  On July 25, 1997, Clanton met with an undercover officer and sold him a .357 Magnum revolver

for $500 in cash.  Presentence Investigation Report ¶ 5, ECF No. 131-1.  On July 29, 1997, during a subsequent meeting with the same undercover officer, Clanton agreed to sell the officer three Glock 9mm firearms for $2,100.  *Id.*  Later that day, Clanton entered the undercover officer's car and requested to see the money for the firearms. *Id.* ¶ 6.  After the undercover officer showed Clanton the money, Clanton pointed a gun at the officer and threatened to kill him if he did not give Clanton the money. *Id.*  A backup response team arrived on scene shortly thereafter, and Clanton attempted to flee on foot.  *Id.* ¶ 7.  While running and being chased by the pursuing officers, Clanton pointed and attempted to fire the gun at four of the officers, but the gun did not fire.  *Id.*

Based on this offense conduct, Clanton was charged in a four-count indictment with attempting to kill a Special Deputy United States Marshal (the undercover officer) in violation of 18 U.S.C. §§ 1113 and 1114 (Count One); assaulting the undercover officer with a deadly and dangerous weapon while the officer was in the performance of official duties in violation of 18 U.S.C. § 111(a)(1) and 111(b) (Count Two); a violation of the Hobbs Act, 18 U.S.C. § 1951 (Count Three); and use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1) (Count Four).  Indictment at 1–3, ECF No. 131-2.  Count Three specifically stated that Clanton "did knowingly and intentionally obstruct, delay and affect commerce and the movement of an article and commodity in

commerce by robbery in that the defendant . . . did take property by robbery from a Special Deputy United States Marshal." *Id.* at 2.

On October 22, 1997, Clanton pleaded guilty, pursuant to a plea agreement,[1] to Counts Three and Four of the indictment. Plea Tr. at 3:23–4:2, ECF No. 126-1. During the plea allocution, Magistrate Judge A. Simon Cherin and the Assistant U.S. Attorney discussed the interstate commerce element of Count Three and whether the charge was for an attempted or a completed Hobbs Act robbery:

> THE COURT: . . . The first charge, that's Count 3[,] is that on or about July 29th within this district, you knowingly [and] intentionally obstructed, delayed, and affected commerce in connection with the movement of an article in interstate commerce by committing a robbery. Is this a carjacking, Mr. Gunther?

---

[1] In their briefs, the parties briefly discussed whether Clanton is barred from collaterally attacking his § 924(c) conviction by the terms of his plea agreement, but neither party fully addressed the issue or provided a copy of the plea agreement. *See* Gov't Opp'n at 2–3 n.1, ECF No. 131; Def. Reply at 3, ECF No. 132. During Clanton's plea allocution, the AUSA indicated that the plea agreement contained "a waiver of the defendant's right to appeal as long as the sentence is within and below the sentencing range estimated in the plea agreement," Plea Tr. at 20:8–13, ECF No. 126-1, and Clanton was indeed sentenced within the Sentencing Guidelines range, Judgment at 4, ECF No. 32. Thus, Clanton may have waived his right to bring the present *coram nobis* petition. *See Sprull v. United States*, No. 20-cv-5051, 2021 WL 1405943, at *2 (S.D.N.Y. Apr. 14, 2021) (finding that the defendant had waived the right in his plea agreement to collaterally attack a Hobbs Act conviction on the ground that his conduct did not affect interstate commerce because "[t]his is a fact-based challenge to an element of the offense" rather than an "alleged jurisdictional defect" (citation omitted)). Because the parties did not discuss or provide the actual terms of the plea agreement, however, I proceed to the merits of Clanton's petition and conclude that his claim fails.

MR. GUNTHER [AUSA]:  No, Your Honor[,] it's a robbery of an undercover detective who was going to sell guns to the defendant.[2]

THE COURT:  Okay and the guns I take it were not made in New York?

MR. GUNTHER:  That's correct.

THE COURT:  And the robbery is alleged to have taken place in the Eastern District of New York?

MR. GUNTHER:  Yes, Your Honor.

THE COURT:  Okay, so it's charged that by a commission of an act of robbery or an attempted robbery you were affecting the movement of goods in interstate commerce.  The real charge is that you attempted a robbery.  It is an attempt or consummated?

MR. GUNTHER:  Actually both.

THE COURT:  Do you understand what you're charged with in this count?

MR. CLANTON:  Yes.

*Id.* at 6:20–7:18.  Later in the plea allocution, Magistrate Judge Cherin discussed the

interstate commerce element with the defense counsel and AUSA more specifically:

THE COURT:  I think the question of the interstate character of the guns, which is the nexus to Federal jurisdiction, is that correct?

MR. GUNTHER:  Yes.

THE COURT:  That can be established by an offer of proof.  What would that offer of proof be?

---

[2] This description of the transaction is incorrect.  Clanton stated later in the allocution that the undercover officer had in fact agreed to buy guns from him.  *See* Plea Tr. at 18:6–13.

MR. GUNTHER:  The Government will prove that the defendant was depleting the assets of someone he believed to be purchasing firearms and then travelling interstate.

THE COURT:  And I take it that the Government's position would be that even though this was an illicit commerce, as long as the Government agent had the right, the legal right to have those guns and the right to purchase the weapons, that could still ground and prod a conviction, is that the Government's contention?

MR. GUNTHER:  Yes, Your Honor.

THE COURT:  Are you questioning their contention?

MR. GUTMAN [Defense Counsel]:  No, Your Honor.

THE COURT:  All right, I'm satisfied on the basis of this allocution that there's a factual basis to support this guilty plea.  The defendant has acknowledged that he committed a robbery of somebody who was about to buy guns from him.  He also acknowledged that when he committed the robbery, he used or had with him a firearm.  . . . That establishes a factual basis for his guilty plea.

*Id.* at 18:20–19:21.

Although the AUSA stated that Clanton was charged with "both" attempted and completed Hobbs Act robbery, the parties and Magistrate Judge Cherin subsequently referred to the offense conduct as a "robbery" rather than an "attempted robbery" during the plea allocution.  *See id.* at 11:20, 12:15, 19:15–18, 23:18–22.  Clanton's guilty plea was accepted, and Clanton was sentenced to 97 months' imprisonment.  Judgment at 2, ECF No. 32.

In May 1999, Clanton filed a *habeas corpus* petition under 28 U.S.C. § 2255 to vacate his convictions.  *See Clanton v. United States*, No. 99-CV-2626 (E.D.N.Y),

5

Mot. to Vacate, ECF No. 1.  Among other things, Clanton argued that his attorney rendered constitutionally ineffective assistance because he failed to make certain pretrial motions and instead recommended that Clanton plead guilty.  *Clanton v. United States* ("*Clanton Habeas*"), 284 F.3d 420, 422 (2d Cir. 2002).[3]  The U.S. Attorney's Office opposed the petition, arguing that Clanton's ineffective assistance of counsel claim was conclusory and failed to "identify any motion or application that would have been raised by a responsible attorney."  *Id.* at 423 (quoting July 26, 1999 Letter from AUSA).  In reply, Clanton contended that his attorney should have challenged the Hobbs Act charge on the ground that there was an insufficient nexus between the robbery and interstate commerce.  *Id.*  Clanton's petition was denied "for the reasons stated in the letter/brief of the U.S. Attorney."  *Id.* (quoting August 18, 1999 Order).

Clanton moved for reconsideration and elaborated on his ineffective assistance of counsel claim, arguing that his attorney should have moved to dismiss the Hobbs Act charge for lack of federal jurisdiction because his conduct had no connection to interstate commerce given that he had not actually sold the guns and

---

[3] The Second Circuit opinion memorializes the substance and procedural history of Clanton's § 2255 petition.  The parties' briefs and this order cite to the Second Circuit opinion because the underlying documents are not available in electronic form due to the passage of time.

that the undercover officer had pretended to be a gun buyer. *Id.* The U.S. Attorney responded to these arguments, in pertinent part:

> First, trafficking in handguns in New York State necessarily has an effect on interstate commerce because no handguns are manufactured in New York State. Second, the [undercover officer] was demonstrably in the business of purchasing handguns, albeit in an undercover capacity. . . . Third, the $2,100 that the [undercover officer] brought to the site of the robbery was specifically earmarked for the intended purchase of three additional handguns from Clanton. . . . In sum, Clanton depleted the [undercover officer's] funds intended for the purchase of handguns that traveled in interstate commerce.

*Id.* at 423–24 (quoting September 20, 1999 Letter from AUSA). Clanton's motion for reconsideration was denied in a handwritten order endorsed on the U.S. Attorney's response, stating:

> The motion for reconsideration is denied for the reasons stated on page[s] 5-6 of this letter, and for the additional reason that the petitioner was guilty of the "included offense" of attempting to affect interstate commerce. 18 U.S.C. § 1951. *See United States v. Jannotti*, 673 F.2d 578, 592, 592-593 (3d Cir. 1982).

*Id.* at 424 (quoting November 8, 1999 Endorsed Order). Clanton appealed the decision, and the Second Circuit affirmed. *Id.* at 429. Clanton was released from federal prison and placed on supervised release on January 5, 2005. R. & R. on Violation of Supervised Release at 2, ECF No. 105.

Clanton is presently charged with two new counts of violating 18 U.S.C. § 924(c) for separate offense conduct. *United States v. Clanton* ("*Clanton 2023*"),

No. 23-CR-328 (E.D.N.Y.), Superseding Indictment at 2–3, ECF No. 89.[4]  Section 924(c) contains an enhanced penalty provision that applies to defendants with a prior § 924(c) conviction.  18 U.S.C. § 924(c)(1)(C)(i) ("In the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years.").  As a result, Clanton faces 25 years' imprisonment on each of the present § 924(c) charges—to run consecutively to each other and all other charges—based on his prior § 924(c) conviction.

On June 10, 2024, Clanton submitted a petition for a writ of error *coram nobis* to vacate his prior § 924(c) conviction, arguing that the interstate commerce element required for a completed Hobbs Act robbery conviction was not satisfied because "there was no actual effect on commerce" given that he "only robb[ed] an undercover officer pretending to be engaged in commerce."  Pet. at 2, 10, ECF No. 126.  Clanton contends that because the interstate commerce element was not satisfied, he was not convicted of a completed Hobbs Act robbery, which "[requires] an actual effect on commerce."  *Id.* at 10.  Rather, Clanton asserts he was only convicted of attempted Hobbs Act robbery, which does not require an actual effect

---

[4] As of the date of this order, Clanton is scheduled to be tried on these counts on January 27, 2025 before Judge Kiyo Matsumoto.  *Clanton 2023*, June 18, 2024 Minute Entry.

on interstate commerce. *See id.* Because the Supreme Court held in *Taylor*—decided after Clanton was released—that attempted Hobbs Act robbery is not a "crime of violence" for the purposes of § 924(c), Clanton argues that his prior § 924(c) conviction must be vacated.[5] *Id.* at 2.

## II.   Legal Standard

A district court may issue a writ of error *coram nobis* pursuant to the All Writs Act. 28 U.S.C. § 1651(a); *see also United States v. Morgan*, 346 U.S. 502, 506, 511 (1954) (holding that "the District Court has power to grant" a *coram nobis* petition under "the all-writs section of the Judicial Code"). A writ of error *coram nobis* is a "remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998). "The writ of error *coram nobis* is an extraordinary remedy that issues only in extreme cases." *United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018) (internal quotation marks and citation omitted). "*Coram nobis* is not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and

---

[5] Courts in the Second Circuit have indeed reversed § 924(c) convictions that were predicated on attempted Hobbs Act robberies following *Taylor*. *See, e.g.*, *United States v. McCoy*, 58 F.4th 72, 73 (2d Cir. 2023).

invalid." *Foont v. United States* ("*Foont II*"), 93 F.3d 76, 78 (2d Cir. 1996) (internal quotation marks and citation omitted). In considering whether to grant *coram nobis* relief, "a court must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner." *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000) (citing *Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992)).

A petitioner seeking *coram nobis* relief in the Second Circuit must demonstrate that: "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014) (quoting *Foont II*, 93 F.3d at 79). Courts often begin the analysis of a *coram nobis* petition with the two procedural prongs—whether the petition is timely and whether the petitioner suffers continuing legal consequences. *See, e.g.*, *Dixon v. United States*, No. 24-cv-4312, 2024 WL 3413735, at *2 (S.D.N.Y. July 15, 2024); *see also United States v. Foont* ("*Foont I*"), 901 F. Supp. 729, 733 (S.D.N.Y. 1995), *aff'd*, 93 F.3d 76 (2d Cir. 1996) ("[O]f the three prerequisites to granting of the writ . . . the first is substantive and the second and third are procedural.").

### III.   Discussion

### A.   Timeliness

To satisfy the timeliness prong, petitioner must show that there are "sound reasons" for the delay in seeking *coram nobis* relief. *Kovacs*, 744 F.3d at 49. "[T]he time for filing a [*coram nobis*] petition is not subject to a specific statute of limitations." *Foont II*, 93 F.3d at 79 (citation omitted). Nevertheless, "[a] petition for writ of *coram nobis* may be time barred if the petitioner cannot provide a justified reason for failure to seek appropriate relief at an earlier date." *United States v. Hernandez*, 283 F. Supp. 3d 144, 153 (S.D.N.Y. 2018) (internal quotation marks and citation omitted). "District courts decide the timeliness of a *coram nobis* petition . . . in light of the circumstances of the individual case." *Evangelista v. United States*, No. 11-cv-5085, 2012 WL 3818109, at *3 (E.D.N.Y. Sept. 4, 2012) (internal quotation marks and citation omitted). In evaluating the timeliness of the petition, "[t]he 'critical inquiry' is whether the petitioner 'knew or should have known' earlier of facts underlying the claim for *coram nobis* relief." *Id.* (quoting *Foont II,* 93 F.3d at 78).

When a petitioner seeks *coram nobis* relief because of a change in the law, courts consider the timeliness of the petition relative to the date the law changed. For example, in *Tavera v. United States*, No. 20-cv-6342, 2021 WL 2453940 (E.D.N.Y. June 16, 2021), the court considered the timeliness of a *coram nobis*

petition seeking vacatur of a § 924(c) conviction that was predicated on conspiracy to commit Hobbs Act robberies following the Supreme Court's decision in *Davis v. United States*, 588 U.S. 445, 470 (2019), which held that the residual clause of § 924(c) was unconstitutionally vague. *Tavera*, 2021 WL 2453940, at *3. The court found that the "operative date, at which point Petitioner 'knew or should have known' of the 'facts underlying the claim for *coram nobis* relief' was on June 24, 2019, when the Supreme Court decided *Davis*," and held that the petition filed approximately18 months later was timely. *Id.*; *see also Young v. United States*, No. 04-CR-0209, 2019 WL 2162946, at *3 (E.D.N.Y. May 16, 2019) (finding that a *coram nobis* petition was timely when it was filed approximately four months after the decision that gave rise to the petitioner's claim).

Clanton's petition provides "sound reasons" for the delay in seeking *coram nobis* relief. Clanton establishes that he could not have brought such a petition prior to both the Supreme Court's decision in *Taylor* and his indictment for additional § 924(c) violations. Pet. at 15–16. On June 21, 2022, the Supreme Court decided *Taylor*, holding that an attempted Hobbs Act robbery could not serve as a predicate crime of violence for a § 924(c) conviction. 596 U.S. at 852. Prior to *Taylor*, Clanton could not have sought to vacate his § 924(c) conviction on the ground that he was only convicted of an attempted Hobbs Act robbery. While Clanton could

12

(and did)[6] raise the argument that the interstate commerce nexus was not sufficient to convict him of a Hobbs Act robbery before *Taylor*, the argument that the nexus was only satisfied for attempted robbery would have been of no consequence—in either case, the § 924(c) conviction was valid.  Moreover, at the time *Taylor* was decided in June 2022, Clanton had already served his sentence for the § 924(c) conviction and so justifiably did not seek *coram nobis* relief at that time.  If Clanton had brought a *coram nobis* petition in June 2022, it likely would have been denied on the ground that he did not suffer continuing legal consequences as a result of the § 924(c) conviction.  On August 15, 2023, Clanton was charged with additional § 924(c) violations.  Given the mandatory sentence enhancement that Clanton faces on these new charges, Clanton had reason at that point to seek vacatur of his prior § 924(c) conviction based on *Taylor*.  Clanton filed his *coram nobis* petition on June 10, 2024, less than a year after he was first charged with new § 924(c) offenses, which is timely for the purpose of a *coram nobis* petition in the Second Circuit.  *See,*

---

[6] Clanton raised the issue of whether the interstate commerce nexus was satisfied in his § 2255 petition in May 1999.  *Clanton Habeas*, 284 F.3d at 422–23.  The order denying Clanton's petition, however, did not determine whether Clanton was convicted of a completed or attempted Hobbs Act robbery; indeed, the order denying reconsideration of the petition included reasoning that would support either inference:  "The motion for reconsideration is denied for the reasons stated on page[s] 5-6 of this letter, and for the additional reason that the petitioner was guilty of the 'included offense' of attempting to affect commerce."  *Id.* at 424 (quoting November 8, 1999 Endorsed Order).

*e.g.*, *Tavera*, 2021 WL 2453940, at *4 (finding that a *coram nobis* petition filed approximately 18 months after the operative date was timely); *Carnesi v. United States*, 933 F. Supp. 2d 388, 396–97 (E.D.N.Y. 2013) (same for 13 months).

### B.   Continuing Legal Consequences

To satisfy the continuing legal consequences prong, "petitioner must at least point to 'a concrete threat that an erroneous conviction's lingering disabilities will cause serious harm.'" *Fleming*, 146 F.3d at 91 (quoting *United States v. Craig*, 907 F.2d 653, 658 (7th Cir. 1990)).  Where a prior conviction "serves as an 'aggravating factor' in sentencing for a subsequent offense," courts have "found continuing legal consequences that would support granting the writ." *Id.* at 90 (quoting *Nicks*, 955 F.2d at 167).  In particular, courts have found that a defendant serving a sentence enhanced by the repeat offender provision of § 924(c) can properly challenge his or her first § 924(c) conviction with a *coram nobis* petition because of the ongoing legal consequences of the conviction.  *See United States v. McDaniel*, 85 F.4th 176, 183 (4th Cir. 2023); *United States v. Stubbs*, No. 2:94-cr-221-2, 2023 WL 4880762, at *4 (W.D. Pa. Aug. 1, 2023).

Clanton establishes—and the U.S. Attorney does not contest—that he suffers from continuing legal consequences as a result of his conviction.  *See* Pet. at 15.  If his prior § 924(c) conviction is not vacated, he faces a mandatory minimum 25 years' imprisonment on each of the § 924(c) counts with which he is charged.  This is a

"concrete" and "serious" legal consequence attributable to his prior conviction, which can be remedied through the writ of error *coram nobis*. *Fleming*, 146 F.3d at 91.[7]

## C.    Circumstances Compelling Action

The final prong of the analysis typically considers the merits of the petitioner's argument. *See Foont I*, 901 F. Supp. at 733 (explaining that the analysis of this prong is "substantive"). Although Clanton satisfied the two procedural prongs of the test for *coram nobis* relief, his claim fails because he committed and pleaded guilty to a completed Hobbs Act robbery, which is a crime of violence for purposes of § 924(c).[8]

---

[7] Clanton also contends that a ruling on his *coram nobis* petition now, prior to his trial on the § 924(c) charges, would not be an advisory opinion because "[t]he issue here is far from speculative." Pet. at 17. Clanton notes that he "cannot adequately weigh his options in his pending case, and neither counsel nor the [c]ourt can advise him of the consequences of a guilty plea, without knowing his mandatory punishment." *Id.* at 16. The U.S. Attorney does not challenge this argument. Because Clanton's petition raises ongoing legal consequences and poses a concrete controversy, a ruling on the *coram nobis* petition before Clanton's trial is not an advisory opinion. *Cf. United States v. Ragonese*, 47 F.4th 106, 109–10 (2d Cir. 2022) (explaining that the district court had ruled on whether the defendant's prior New York state conviction triggered enhanced penalties of 18 U.S.C. § 2252A(b) prior to the defendant's guilty plea).

[8] Clanton argues, in the alternative, that even if he was convicted of a completed Hobbs Act robbery, his § 924(c) conviction should be vacated because a completed Hobbs Act robbery is also not a crime of violence. Pet. at 13–14. Following the Supreme Court's decision in *Taylor*, the Second Circuit reaffirmed its prior holding that a completed Hobbs Act robbery is a crime of violence for purposes of § 924(c).

When a defendant is convicted under a statute that is "divisible" because it defines more than one offense, courts use the "modified categorical approach" to determine the offense of the conviction. *See Mathis v. United States*, 579 U.S. 500, 505 (2016). In doing so, a court may consider "a limited class of documents" from the record of conviction, including the "indictment, jury instructions, or plea agreement and colloquy." *Id.* The Hobbs Act is a divisible statute, and therefore the modified categorical approach is used to determine whether a conviction under 18 U.S.C. § 1951 was a completed Hobbs Act robbery, an attempted Hobbs Act robbery, or a conspiracy to commit a Hobbs Act robbery. *See Aponte v. United States*, No. 16-cv-3511, 2023 WL 3600848, at *6 (S.D.N.Y. May 23, 2023).

Applying the modified categorical approach to the present case, Clanton's indictment and plea colloquy establish that he pleaded guilty to a completed Hobbs Act robbery. The relevant Count of the indictment charged that Clanton "did knowingly and intentionally obstruct, delay and affect commerce and the movement of an article and commodity in commerce by robbery in that the defendant . . . did take property by robbery from a Special Deputy United States Marshal." Indictment at 2. The plain language of the indictment—including the use of "by robbery" and

---

*United States v. McCoy*, 58 F.4th 72, 74 (2d Cir. 2023); *United States v. Barrett*, 102 F.4th 60, 83 (2d Cir. 2024). Clanton recognizes that this Second Circuit precedent is controlling but raises the issue to preserve it for appeal. Pet. at 14.

"did take property by robbery"—indicates that Clanton was charged with a completed robbery. *See Aponte*, 2023 WL 3600848, at *6 (concluding that language in the indictment stating that the defendant "forcibly entered . . . and robbed the occupants" and "robbed the occupants of an apartment" described "an actual robbery"). The indictment does not use any language to suggest that the crime was an attempted Hobbs Act robbery rather than a completed Hobbs Act robbery.

The transcript of Clanton's plea allocution also indicates that Clanton was convicted of a completed Hobbs Act robbery. During the plea hearing, Magistrate Judge Cherin asked if Clanton was charged with "an attempt or consummated" Hobbs Act violation. Plea Tr. at 7:10–14. The AUSA responded, "Actually both." *Id.* at 7:15. For the remainder of the plea allocution, however, Magistrate Judge Cherin and the parties consistently referred to the offense conduct as a "robbery" and Clanton explicitly conceded that he had participated in a "robbery." *See id.* at 11:20, 12:15, 18:2–17, 19:15–18, 23:18–22. Neither Clanton nor his counsel objected to these statements. *See id.*

Moreover, the facts of Clanton's offense conduct are sufficient to establish that he committed a Hobbs Act robbery. The Hobbs Act makes it unlawful "in any way or degree" to "obstruct[], delay[], or affect[] commerce or the movement of any article or commodity in commerce, by robbery or extortion." 18 U.S.C. § 1951(a). In a Hobbs Act prosecution, the government must prove an effect on interstate

commerce as an element of the offense. *Stirone v. United* States, 361 U.S. 212, 218 (1960); *see also United States v. Wilkerson*, 361 F.3d 717, 726 (2d Cir. 2004). The government's burden of proving a nexus to interstate commerce is minimal, however. The law of the Second Circuit "requires no more than a *de minimis* impact on interstate commerce" to establish jurisdiction under the Hobbs Act. *United States v. Elias*, 285 F.3d 183, 188 (2d Cir. 2002) (finding the interstate commerce nexus satisfied in a robbery of a neighborhood grocery store that sold beer and fruit originating from outside the state). "Sufficient proof to support a violation of the Act has been presented if the robbery . . . in any way or degree affects commerce, even though the effect is not immediate or direct or significant, but instead is postponed, indirect and slight." *United States v. Jones*, 30 F.3d 276, 284–85 (2d Cir. 1994) (internal quotation marks and citation omitted). When a robbery involves items that "cannot be produced in New York, and thus necessarily travel in interstate commerce," the interstate commerce nexus is satisfied. *See United States v. Needham*, 604 F.3d 673, 680 (2d Cir. 2010) (finding that the interstate commerce element was satisfied for robberies of cocaine and heroin because the drugs "necessarily originate out-of-state").

In *United States v. Jones*, the Second Circuit considered whether the robbery of an undercover agent in a "buy and bust" operation had a sufficient nexus to interstate commerce to support the defendants' conviction for Hobbs Act robbery.

30 F.3d at 284–85.  In that case, the drug-dealer defendants robbed an undercover officer of cash he had intended to use to buy drugs and were subsequently convicted of attempted and completed Hobbs Act robbery, among other counts.  *Id.* at 279–81.  On appeal, one defendant argued that the government "failed to produce evidence sufficient to prove that the funds stolen from [the undercover agent], with which he intended to purchase cocaine, could supply the necessary nexus to interstate commerce required to prove a Hobbs Act violation."  *Id.* at 284.  The Second Circuit upheld the conviction, reasoning that cocaine "travels in interstate commerce" and "[t]he robbery of $9,000 from [the undercover agent] affected interstate commerce because the loss of those funds limited the amount of cocaine he would have been able to purchase in the future."  *Id.* at 285.  This "depletion-of-assets" theory has been upheld in subsequent cases in the Second Circuit.  *See, e.g.*, *United States v. Silverio*, 335 F.3d 183, 187 (2d Cir. 2003); *Elias*, 285 F.3d at 189.  Additionally, the court in *Jones* rejected the argument that the interstate commerce nexus was not satisfied because the victim was a government agent and thus "any potential effect on interstate commerce was one the government contrived," finding that it made no difference to the analysis.  30 F.3d at 285.  The Second Circuit likewise rejected the argument that the interstate commerce nexus could not be established because of the illegal nature of the drugs involved.  *Id.* at 285–86.

In the present case, the interstate commerce nexus is satisfied for similar reasons.  When Clanton robbed the undercover officer, he took the money that the officer intended to use to purchase guns that originated from out-of-state and thus had travelled in interstate commerce.  During the plea allocution, the AUSA proffered to the fact that Clanton "deplet[ed] the assets of someone he believed to be purchasing firearms," and that the guns in question had originated outside of New York, and neither Clanton nor defense counsel objected.  Plea Tr. at 7:4–6, 19:1–3.  Under the depletion-of-assets theory established in *Jones*, this is enough to establish a nexus to interstate commerce, particularly because the impact on interstate commerce need only be "*de minimis*."  *Elias*, 285 F.3d at 188.

Clanton argues that the depletion-of-assets theory does not apply in this case because the theory "requires the defendant deplete the assets of someone engaged in commerce such as a business owner."  Pet. at 8.  *Jones*, however, compels the rejection of this argument because, just as in the present case, that case involved the robbery of an individual who was an undercover officer, not a business owner.  30 F.3d at 279–81.  Clanton also argues that "[m]erely depleting the assets of an ordinary customer who buys something and then travels interstate . . . has never been held to satisfy the Hobbs Act."  Pet. at 8–9.  This argument is also unpersuasive, however, because the AUSA proffered during Clanton's plea allocution that the guns at issue were from out-of-state, not just that the undercover officer intended to travel

interstate with the guns.   Plea Tr. at 7:4–6.   When a robbery targets funds that otherwise would have been used to buy goods that travel in interstate commerce— such as the guns at issue here—the depletion-of-assets theory may properly be applied.   *See United States v. Taylor*, 92 F.3d 1313, 1333 (2d Cir. 1996) ("[T]he . . . activities of United Brooklyn interfered with commerce . . . by depleting the funds available to the targeted contractors for the purchase of goods and supplies in interstate commerce.").

In arguing for relief, Clanton relies heavily on *United States v. Jannotti*, which was cited in the handwritten order denying Clanton's request for reconsideration of his § 2255 petition.   *See* Pet. at 9–10.   In *Jannotti*, two Philadelphia City Council members were charged with Hobbs Act extortion and conspiracy, among other charges, after accepting bribe payments from FBI agents posing as employees of a fictious corporation seeking to build a hotel in Philadelphia.   673 F.2d at 581–90. The court dismissed the substantive Hobbs Act count prior to trial on the ground that "there was no possibility that the bribe payments could actually have affected commerce."   *Id.* at 591, 610.   After a jury found the defendants guilty of the remaining charges, the district court set aside the verdict and dismissed the Hobbs Act conspiracy count for lack of jurisdiction.   *Id*. at 580.   The Third Circuit reversed the decision, holding that there was a sufficient nexus to interstate commerce to sustain the conviction for Hobbs Act conspiracy.   *Id.* at 591, 594.   The Third Circuit

21

did not fully address the substantive Hobbs Act charge but left the district court's decision to dismiss the charge in place. *Id.* at 591. Clanton argues that this case "stands for the proposition that a completed Hobbs Act offense will require an actual effect on commerce, whereas inchoate offenses will not." Pet. at 10. But Clanton overlooks the fact that his conduct did have an "actual effect on commerce." *Id.* While *Jannotti* only involved discussions about the hypothetical development of a hotel, Clanton's case involved guns that had in fact moved in interstate commerce and money earmarked for the purchase of those guns. Clanton's case is thus distinguishable from *Jannotti* and similar to *Jones*, in which the Second Circuit found that the interstate commerce element was satisfied based on the depletion-of-assets theory. Because Clanton's conduct affected interstate commerce, Clanton both committed and pleaded guilty to a completed Hobbs Act robbery.

## IV.    Conclusion

For the reasons set forth above, Clanton's petition for a writ of error *coram nobis* is denied.

**SO ORDERED.**

Brooklyn, New York
October 2, 2024

*Edward R. Korman*
Edward R. Korman
United States District Judge